NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARLOS ROBERTO ROJAS-MONDRAGON, <br><br> Petitioner, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General, <br><br> Respondent. | No.    18-71554 <br><br> Agency No. A201-240-589 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 9, 2020[**]
Portland, Oregon

Before:  BENNETT and MILLER, Circuit Judges, and NAVARRO,[***] District Judge.

Carlos Rojas-Mondragon, a native and citizen of Honduras, petitions for

review of the Board of Immigration Appeals' (BIA) order dismissing his appeal

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Gloria M. Navarro, United States District Judge for the District of Nevada, sitting by designation.

from an immigration judge's decision denying his application for asylum and withholding of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We review the BIA's factual findings for substantial evidence. *Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014). We deny the petition.

The BIA denied relief after finding Rojas-Mondragon did not meet his burden to show that the Honduran government was unable or unwilling to protect him from the private persecution he suffered or fears. Substantial evidence supports the BIA's finding.

Rojas-Mondragon did not present evidence which compels the conclusion that the Honduran government was unable or unwilling to control the type of harm he suffered. Only one article in the record discusses the conflict between Hondurans and Nicaraguan refugees. The article describes rising tensions between the residents of one Nicaraguan refugee camp and the surrounding Honduran population after one Honduran "detained a refugee in a dispute over firewood." The Honduran police responded to the conflict, and both the United Nations and Honduran officials "feel that the problems have been solved." To the extent any tensions discussed in the article remain, the article does not discuss violence against Nicaraguan refugees on account of their nationality or refugee status. The article only describes conflict over resources including firewood, food, and medicine.

2

The remaining evidence Rojas-Mondragon offered in support of his petition—several news articles and a U.S. State Department country report—indicates that the Honduran government struggles to control private persecution at the hands of organized crime. The BIA concluded that "the mistreatment the respondent experienced and fears is from private citizens with no apparent connection to organized crime." The record is devoid of evidence that would compel a different conclusion.

Given the lack of evidence germane to Rojas-Mondragon's claim, we cannot hold that "any reasonable adjudicator would be compelled to conclude" the Honduran government was unable or unwilling to control Rojas-Mondragon's alleged persecutors. 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992). Accordingly, the BIA properly rejected Rojas-Mondragon's claim to relief. *Cf. Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1069–70 (9th Cir. 2017) (explaining that an asylum-seeker bears the burden to show "by a preponderance of evidence, considering all the evidence in the record" that the government of removal is unable or unwilling to control the private persecution alleged).

**PETITION DENIED**.